UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

BARBARA SIMMONS              §
                             §
v.                           §        CIVIL NO. 4:21-CV-452-SDJ
                             §
THE CITY OF MCKINNEY, TEXAS, §
ET AL.                       §

## MEMORANDUM OPINION AND ORDER

Plaintiff Barbara Simmons alleges that Defendants The City of McKinney, Texas ("McKinney") and the McKinney Police Department ("MPD") violated her rights under the United States Constitution and state law during a traffic stop. Before the Court is McKinney and MPD's Motion to Dismiss or in the Alternative for Summary Judgment. (Dkt. #12). The motion is fully briefed. (Dkt. #15, #17). Having considered the motion, the subsequent briefing, and the applicable law, the Court **GRANTS** the motion and dismisses Simmons's claims against McKinney and MPD.

### I. BACKGROUND

On June 15, 2019, MPD officers pulled Simmons over while she was driving in McKinney. (Dkt. #1 ¶ 7). The officers approached Simmons with weapons drawn and ordered her to exit the vehicle. (Dkt. #1 ¶ 7). After Simmons exited the vehicle and knelt on the ground, the officers handcuffed her. (Dkt. #1 ¶ 8). When they did so, Simmons "cried out in pain." (Dkt. #1 ¶ 8). The officers released Simmons shortly thereafter, and no charges were filed against her. (Dkt. #1 ¶ 10). Simmons alleges that she suffered injuries to her neck, shoulders, and back as a result of the

1

handcuffing and that she continues to suffer pain and psychological distress from this incident. (Dkt. #1 ¶ 10).

Two years later, Simmons filed this action against McKinney and MPD. Simmons brings claims under 42 U.S.C. § 1983 for excessive force, failure to train, and false arrest. She also asserts state-law tort claims for assault and battery. Notably, Simmons has not sued any MPD officers or any individual person. McKinney and MPD now move to dismiss the complaint.[1]

## II. Legal Standard

It is unclear whether McKinney and MPD have moved to dismiss Simmons's complaint under Federal Rule of Civil Procedure 12(b)(6) or moved for judgment on the pleadings under Federal Rule of Civil Procedure Rule 12(c). *Compare* (Dkt. #12 at 7 ("The McKinney Defendants seek dismissal based on Plaintiff's live pleading because the pleading fails to state a claim for which relief can be granted.")), *with* (Dkt. #12 at 11 ("McKinney Defendants move for judgment on the pleadings under Rule 12.")). In any event, the "standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019).

---

[1] In the alternative, McKinney and MPD move for summary judgment under Federal Rule of Civil Procedure 56. Because Simmons has failed to state a claim that is plausible on its face, the Court need not decide whether summary judgment is appropriate. And because the Court is treating McKinney and MPD's motion as one for dismissal under Federal Rule of Civil Procedure 12, the Court has excluded from consideration all matters outside the pleadings that the parties submitted in connection with the motion. *See* FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). Determining whether a claim is plausible is a two-step inquiry. First, a court "must identify the complaint's well-pleaded factual content," which is entitled to a presumption of truth, and set aside "any unsupported legal conclusions," which are not entitled to the same presumption. *Id.* (quoting *Doe v. Robertson*, 751 F.3d 383, 388 (5th Cir. 2014)).

Second, after removing all unsupported legal conclusions, the court must ask whether "the remaining allegations are sufficient to nudge the plaintiff's claim across the plausibility threshold." *Waller*, 922 F.3d at 599 (cleaned up). This threshold is surpassed when the court, drawing on its common sense and judicial experience, "can reasonably infer from the complaint's well-pleaded factual content 'more than the mere possibility of misconduct.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

### III. DISCUSSION

McKinney and MPD make three principal arguments in their motion to dismiss. First, MPD argues that it cannot be sued because it is a nonjural entity. Second, McKinney contends that Simmons has failed to state a plausible Section 1983 claim against it for excessive force, false arrest, or failure to train. Third, McKinney and MPD argue that governmental immunity shields them from Simmons's state-law claims for assault and battery. The Court addresses these arguments in turn.

**A. Claims Against MPD**

In its motion, MPD argues that all of Simmons's claims against it fail because it is a nonjural entity that lacks the capacity to be sued. Simmons has not responded to this argument. *See* (Dkt. #15).

A plaintiff may not bring a claim against a governmental agency or department unless it enjoys a separate and distinct legal existence. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313–14 (5th Cir. 1991). State agencies that have independent capacity to sue and be sued are known as jural entities; nonjural entities lack such capacity and are not subject to suit. *Id.* The capacity of a county or city department to be sued is determined by the law of the state where the district court is located. *Darby*, 939 F.2d at 313; FED. R. CIV. P. 17(b)(3).

Because this Court sits in Texas, it must apply Texas law to determine whether MPD has the capacity to be sued. *See Darby*, 939 F.2d at 313. In Texas, the general rule is that law enforcement agencies, such as county sheriffs' offices and police departments, are not separate legal entities that can be sued. *Thrasher v. Fort Worth Police Dep't*, No. 4:20-CV-350-SDJ-KPJ, 2021 WL 1139746, at *2 (E.D. Tex. Feb. 22, 2021), *report and recommendation adopted*, 2021 WL 1123773 (E.D. Tex. Mar. 24, 2021); *Plemons v. Amos*, No. 2:03-CV-421-J, 2006 WL 1710415, at *7 (N.D. Tex. June 22, 2006) (collecting cases). The plaintiff bears the burden to show that the county or city has taken "explicit steps" to grant the law enforcement department with jural authority. *See Darby*, 939 F.2d at 313–14; *see also Thrasher*, 2021 WL 1139746, at *2.

Here, MPD is a law enforcement department of the City of McKinney. The City of McKinney is a "home rule city," which is organized in a similar manner as a corporation. MCKINNEY, TEX., CODE OF ORDINANCES, CH. II § 6, available at https://library.municode.com/tx/mckinney/codes/code_of_ordinances?nodeId=PTICH _CHIIFOGO_S5POCI (updated July 8, 2022). The Texas Local Government Code "grants all authority to organize a police force to the [home rule] city itself." *Darby*, 939 F.2d at 313 (citing TEX. LOC. GOV'T CODE ANN. § 341.003). The Charter of the City of McKinney, in turn, reserves to the municipality itself the power to sue and be sued. MCKINNEY, TEX., CODE OF ORDINANCES, CH. II § 5. McKinney's charter, however, nowhere grants MPD the power to sue or be sued. *See, e.g.*, *id.* CH. VIII § 64 (describing MPD's authority).

There are likewise no allegations in Simmons's complaint that McKinney has granted MPD jural authority. *See* (Dkt. #1). Thus, taking all the allegations in the complaint as true, Simmons's suit against MPD "seeks recovery from a legal entity that does not exist for [her] purposes." *See Darby*, 939 F.2d at 314. The Court therefore dismisses Simmons's claims against MPD.

## B. Section 1983 Claims for Excessive Force and False Arrest

The Court next considers whether Simmons has stated plausible Section 1983 claims against McKinney for violating her Fourth Amendment rights to be free from excessive force and false arrest.

A municipality is a "person" subject to Section 1983 liability for violating an individual's constitutional rights. *Monell v. Dep't of Soc. Servs.* 436 U.S. 658, 690,

98 S.Ct. 2018, 56 L.E2d 611 (1978). But it is "well established that a city is not liable under § 1983 on the theory of respondeat superior," *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010), and is "almost never liable for an isolated unconstitutional act on the part of an employee," *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). Rather, a municipality can be held liable only when the deprivation of a federally protected right is "directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle,* 613 F.3d at 541–42 (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

As to the first element of municipal liability, a policy's existence "can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Id.* at 542 (citing *Burge v. St. Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003)). Although a "single decision by a policy maker may, under certain circumstances, constitute a policy for which a municipality may be liable," this "single incident exception is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id.* (cleaned up). A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that

fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)). A plaintiff's allegations about the policy or custom cannot be conclusory; they must contain specific facts showing the existence of such policy or custom. *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

Here, Simmons alleges that "Defendants developed and maintained a policy of deficient training of its police force in the use of force, including the use of excessive force in the apprehension of individuals." (Dkt. #1 ¶ 20). She also alleges that "several[ ]incidents have taken place" in McKinney and that "[t]here exists a practice of excessive force incidents that result from the training or lack thereof received by MPD officers." (Dkt. #1 ¶ 12). Simmons does not allege that McKinney had a policy, custom, or practice of MPD officers making false arrests.

These conclusory allegations are insufficient to support a reasonable inference that an official McKinney policy or a custom existed that led to the alleged violation of Simmons's constitutional rights. Simmons does not point to any specific, prior instances of MPD officers using excessive force or committing wrongful arrests that would indicate a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. Nor does she allege any specific facts that show what training police officers have received and how that training is insufficient. "A mere allegation that a custom or policy exists, without any factual assertions to support such a claim, is no more than a formulaic recitation of the elements of a § 1983 claim and is insufficient to state a claim for relief." *Pinedo v.*

*City of Dallas*, No. 3:14-CV-958-D, 2015 WL 221085, at *6 (N.D. Tex. Jan. 15, 2015). Without factual allegations to support a reasonable inference that such official policies or customs exist, McKinney's motion to dismiss Simmons's claims for excessive force and false arrest must be granted on this ground.

Even if Simmons had plausibly alleged the existence of an official policy or custom, her excessive-force and false-arrest claims would still fail. Although not artfully pleaded, Simmons's claims appear to rely on the McKinney City Council as the final policymaker with authority to promulgate policies and regulations for the MPD. *See* (Dkt. #1 ¶ 2). The City Council may indeed possess such policymaking authority; neither McKinney nor MPD argue otherwise in their dismissal motion.

But to state a claim under Section 1983 against McKinney, Simmons must not only identify a final policymaker but also plead facts that give rise to the reasonable inference that actual or constructive knowledge of the alleged policy or custom is attributable to that policymaker. *See Valle*, 613 F.3d at 542. Actual knowledge may be "shown by such means as discussions at council meetings or receipt of written information." *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) (en banc). Constructive knowledge "may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity." *Id.* Additionally, to meet the causation prong of municipal liability, Simmons must show that "a municipal decision reflects deliberate indifference to the risk that a violation

8

of a particular constitutional or statutory right will follow the decision." *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 411, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).

Simmons alleges in her complaint that "the McKinney City Council delegated with the authority for setting policies, including training of the McKinney Police officers had a duty, but failed to implement and/or enforce policies, practices and procedures for the [MPD] that respected [her] constitutional rights to protection and equal treatment under the law." (Dkt. #1 ¶ 2). She also alleges that "[i]n recent years, as a result of the lack of training and the official custom or policies of the MPD, several[]incidents have taken place in [McKinney] under the direction of the McKinney City Council." (Dkt. #1 ¶ 12). And finally, Simmons alleges that "Defendants' failure to provide adequate training to its police officers regarding the use of excessive force reflects deliberate indifference by Defendants and reckless and conscious disregard for the obvious risk that officers would use excessive or deadly force on citizens and made the violations of [her] constitutional rights, a reasonable probability." (Dkt. #1 ¶ 21).

These conclusory allegations of knowledge and deliberate indifference are insufficient to permit the Court to draw the reasonable inference that the City Council—McKinney's alleged policymaker—can be charged with actual or constructive knowledge of a policy or custom of tolerating the unconstitutional use of excessive force and unlawful arrest; or of a custom or policy of insufficient training, supervision, or discipline; or that the City Council was deliberately indifferent to the risk that a violation of rights would follow. *See Bennett*, 728 F.2d at 768. Simmons

has failed to plead facts that enable the Court to draw the reasonable inference that there have been any prior instances where MPD officers have used excessive force or committed wrongful arrests, such that these instances would alert the City Council to a widespread practice so pervasive as to constitute a custom, or to a failure in the training mechanisms in place. In short, Simmons's assertions are not factual allegations that provide "the grounds of h[er] entitlement to relief"—they are nothing more than "a formulaic recitation of the elements of a [Section 1983] cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (cleaned up).

At bottom, Simmons has failed to plausibly allege that the City Council had actual or constructive knowledge of a custom or policy, or exhibited deliberate indifference to the risk that a violation of constitutional rights would result from that policy or custom. Simmons's Section 1983 claims against McKinney for excessive force and false arrest must be dismissed on these grounds as well.

## C. Failure-to-Train Claim

The Court now turns to Simmons's Section 1983 claim that McKinney violated her constitutional rights by "failing to provide proper training in the use of excessive force." (Dkt. #1 ¶ 18).

A failure-to-train claim is a species of *Monell* liability. *Hutcheson v. Dallas County*, 994 F.3d 477, 482 (5th Cir. 2021). The "failure to train can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Id.*

(quotation omitted). To proceed beyond the pleading stage, a plaintiff must plausibly allege that "(1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Id.* (quotation omitted).

"Deliberate indifference is a stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," for which a "showing of simple or even heightened negligence will not suffice." *Valle*, 613 F.3d at 542, 547 (quotations omitted). To establish deliberate indifference, a plaintiff ordinarily must allege a "pattern of similar constitutional violations by untrained employees." *Hutcheson*, 994 F.3d at 482 (quotation omitted). But where such a pattern does not exist, it is still possible for a plaintiff to establish deliberate indifference through the single-incident exception. *Id.*

The single-incident exception is "extremely narrow" and requires the plaintiff to "prove that the highly predictable consequence of a failure to train would result in the specific injury suffered." *Id.* (quotation omitted). To be highly predictable, the municipality "must have failed to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 624–25 (5th Cir. 2018) (cleaned up). The single-incident exception "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Hutcheson*, 994 F.3d at 483 (quotation omitted).

11

Here, McKinney argues that Simmons has failed to plead facts sufficient to establish the third element of her failure-to-train claim—deliberate indifference. The Court agrees. Simmons alleges that McKinney's failure to train "has resulted in a number of assault claims, including this assault," (Dkt. #1 ¶ 18), and that there is a "practice of excessive force incidents that result from the training or lack thereof, received by MPD officers," (Dkt. #1 ¶ 12). But, again, Simmons does not allege any facts about the circumstances of any of those prior incidents. Without such facts, the Court cannot reasonably infer that the facts of the prior incidents are sufficiently similar to those of this case. Simmons's allegations are therefore insufficient to show a pattern of violations that would make it highly predictable that MPD officers would use excessive force at future traffic stops. *See Connick v. Thompson*, 563 U.S. 51, 63, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011) ("Because those incidents are not similar to the violation at issue here, they could not have [provided] notice that specific training was necessary to avoid this constitutional violation."); *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005) ("[N]otice of a pattern of *similar* violations is required.").

Simmons's conclusory allegations about McKinney's deliberate indifference are also inadequate to trigger the single-incident exception. In her complaint, Simmons alleges that McKinney "fail[ed] to provide proper training in the use of excessive force," (Dkt. #1 ¶ 18), "failed to adequately train its employees," (Dkt. #1 ¶ 19), and "maintained a policy of deficient training of its police force in the use of force," (Dkt. #1 ¶ 20). But nowhere in the complaint does Simmons allege that MPD officers

12

received "no training whatsoever" on how to use force. *See Hutcheson*, 994 F.3d at 483 (quotation omitted). Because Simmons has not plausibly alleged that McKinney provided no training to MPD officers, her allegations fail to meet the exacting standard for the narrow single-incident exception. *Id.*

In sum, Simmons has failed to allege facts that permit the Court to draw the reasonable inference that McKinney was deliberately indifferent to an obvious need for training MPD officers in the use of force. The Court therefore dismisses Simmons's failure-to-train claim.

## D. Assault and Battery Claims

Finally, the Court considers McKinney's motion to dismiss Simmons's claims for assault and battery. McKinney argues that these state-law tort claims are barred by governmental immunity. Again, Simmons has not responded to this argument.

Governmental immunity protects "political subdivisions of the State, including counties, cities, and school districts," from liability unless that immunity is waived. *City of Round Rock v. Smith*, 687 S.W.2d 300, 302 (Tex. 1985). The Texas Tort Claims Act ("TTCA") "provides a limited waiver of immunity for certain suits against governmental entities and caps recoverable damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. Under the TTCA, governmental immunity is waived only for cases involving the use of publicly-owned vehicles, premises defects, and injuries arising from the conditions or use of property. TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021, 101.023. This waiver of immunity does not apply to any claim "arising out of assault,

13

battery, false imprisonment, or any other intentional tort." TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2).

Because Simmons' claims for assault and battery are explicitly excepted from the TTCA's waiver of governmental immunity, McKinney is immune from liability. Accordingly, the Court dismisses Simmons's assault and battery claims against McKinney.

**E. Leave to Amend Complaint**

Although Simmons has not requested leave to amend her complaint, the Court will allow her to replead her Section 1983 claims against McKinney. District courts "often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *see also Pinedo*, 2015 WL 221085, at *11 (giving the plaintiff an opportunity to replead without indicating the plaintiff requested leave to amend).

The defects in Simmons's state-law claims against McKinney, however, are incurable because they are barred by governmental immunity. It is likewise clear that the defects in all of Simmons's claims against MPD are incurable because MPD is a nonjural entity. Accordingly, the Court will not permit Simmons to replead her state-law claims against McKinney or any of her claims against MPD.

14

### IV. Conclusion

For the foregoing reasons, McKinney and MPD's Motion to Dismiss or in the Alternative for Summary Judgment, (Dkt. #12), is **GRANTED**.

It is therefore **ORDERED** that all claims against MPD are **DISMISSED with prejudice**.

It is further **ORDERED** that Simmons's state-law claims against McKinney are **DISMISSED with prejudice**.

It is further **ORDERED** that Simmons's Section 1983 claims against McKinney are **DISMISSED without prejudice**.

Finally, it is **ORDERED** that Simmons has **fourteen days** from the date of this order to file an amended complaint that repleads only her Section 1983 claims against McKinney.

**So ORDERED and SIGNED this 1st day of August, 2022.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE

15